JACKSON, *ex dem.* LEPPER and others, *against* GRIS-
WOLD.

THIS was an action of *ejectment*, for land in the
township of *Marcellus*, in the county of *Onondaga.*

The cause was tried at the *Onondaga* circuit, before
Mr. Justice *Thompson.*

At the trial, the plaintiff's counsel produced in evi-
dence, letters patent from the state of *New-York* to
*John Lepherd*, a soldier, in the army of the *United*
*States*, for lot No. 2. in *Marcellus*, including the pre-
mises in question. It was proved, that the lessor of the
plaintiff, now known by the name of *John Lepper*, was
the person who served as a soldier in Col. *Cortlandt's*
regiment, and that there did not appear to be any other
person of a similar name in the army.

The defendant offered in evidence the *award* of the
*Onondaga* commissioners, dated the 1st *March*, 1802,
awarding and determining the title to lot No. 2. in *Mar-*
*cellus*, to be in one *Abraham Ten Eyck;* and the clerk of
the county of *Onondaga* produced a book containing the
awards of the commissioners, which he testified was de-
posited in his office by *James Van Ingen*, clerk of the
commissioners, some time in *December*, 1804, or in *Ja-*
*nuary*, 1805.

The counsel for the plaintiff objected to the reading
of the award in evidence : 1. Because the act appointing
the commissioners, &c. was contrary to the constitution
of the state, and void. 2. Because the powers of the
commissioners were limited by the act to the first *Tues-*
*day* of *March*, 1802, and the book of awards could not
be legally filed in the clerk's office, after that time.
These objections were overruled by the judge, and the
award was read in evidence.

The act to set-
tle disputes con-
cerning titles to
lands in the
county of *Onon-*
*daga*, (20 sess.
c. 51.) is a con-
stitutional act.
The award of
the commission-
ers under that
act, is consider-
ed as a matter
of record, to
take effect from
its date; and un-
less a dissent has
been entered
within two years
from the date of
the award, it is
conclusive. The
date of the a-
ward is *prima*
*facie* evidence
of the time of its
being made; and
strong evidence
will be required
to show that the
date on the face
of the award,
was not the true
time.

The counsel for the plaintiff read in evidence a deed from *John Lepper* to *Eli Parsons* and *Henry Bradt*, two of the lessors, for lot No. 2. in *Marcellus*, dated the 15th *September*, 1797.

Two witnesses testified, that the defendant took possession of the premises in question, in the summer of 1794, and has ever since continued in possession, claiming the same as his own.

*Walter Wood* was called as a witness for the plaintiff. His testimony was objected to, but admitted by the judge. He testified, that he attended before the commissioners, as counsel for *Eli Parsons*, one of the lessors, in support of his claim to the lot in question; that the point in dispute, in relation to this and several other lots, rested upon the alleged infancy of the soldier, at the time of executing the deed under which the adverse party claimed; that he did not recollect that he asked the commissioners whether any award had been made, on the particular lot in question, but he frequently made application to them, between the year 1798 and the month of *February*, 1802, to know whether any decision had been made in relation to these lots, called infant lots, and was uniformly answered in the negative. The witness had frequent recourse to the office of the clerk of the commissioners, between the periods above mentioned, and during that time he did not see the book now produced, nor did he ever see it, until it was filed in the office of the clerk of *Onondaga*; that *Trowbridge*, the former clerk of the commissioners, kept a book of the minutes of the proceedings of the commissioners, and another book, called the book of awards, but which were not signed by the said commissioners; neither of which books was the one produced, nor was it either of the books of minutes kept by the commissioners. He never knew the commissioners to refuse any information which was asked. Another witness testified, that at the

request of *Parsons*, one of the lessors, he inquired of *Sanders Lansing*, one of the commissioners, in *January*, 1804, who informed him that no award had been made on the lot in question; and he applied, at the same time, to *Van Ingen*, the clerk of the commissioners, who informed him, that no award had been made on lot No. 2. in *Marcellus*. In *December*, 1804, or *January*, 1805, he applied again to *Van Ingen* for the same purpose, who replied, that he could not give him the information he required.

The counsel for the plaintiff then insisted, that the award of the commissioners produced was void, and ought to be rejected by the judge, because, from the evidence produced, and the inspection of the book, in which the awards did not follow in order, it appeared, that the commissioners had not caused their awards to be entered in a book provided by them, in the manner required by the act constituting the board of commissioners; and further, that if the award was regular, the plaintiff, from the evidence produced, had shown sufficient to excuse him for not filing his dissent to the award within the time limited by the act, and that he ought not, therefore, to be precluded from bringing his action.

The judge charged the jury, that he considered the award of the commissioners as a matter of record, which took effect from its date; and that, as no dissent had been entered within two years after the date thereof, by the lessors, their right of action was barred, and the award conclusive, and that the defendant was entitled to a verdict. The jury accordingly found a verdict for the defendant.

A motion was made to set aside the verdict; and the case was submitted to the court, without argument.

THOMPSON, J. delivered the opinion of the court. This was an action of ejectment for a part of lot No. 2. in the township of *Marcellus*, in the military tract. An exemplification of a patent to one of the lessors having been produced, the defendant set up an award of the *Onondaga* commissioners, bearing date the 1st day of *March*, 1802, whereby the lot in question was awarded to *Abraham Ten Eyck*. The evidence offered of the award was the record thereof, contained in a book deposited by *James Van Ingen*, clerk of the commissioners, with the clerk of the county of *Onondaga*, some time in *December*, 1804, or *January*, 1805. To the reading of this award the plaintiff's counsel objected,

1. Because the act instituting this board of commissioners, was unconstitutional.

2. Because the powers of the commissioners expired in 1802, and they had no authority afterwards to file the book.

It was also made a question, in the course of the trial, whether the reasons offered, on the part of the plaintiff, for not entering a dissent to the award, were not sufficient to prevent the application of the limitation prescribed by the statute.

These objections were all overruled, and a verdict found for the defendant. The case has been submitted without argument, which is to be regretted, if any reliance is placed on the first objection; for I am unable to discover any grounds giving colour to it. Were the award of these commissioners made final and conclusive respecting the title, there might be some reasonable cause of complaint. But, according to its provisions, the most that can be alleged is, that it is a pretty rigorous statute of limitations. This was a mere question of expediency, resting solely with the legislature, under the peculiar circumstances of that tract of country, called the military tract. Whether this statute is suffi-

ciently guarded in all its parts, is not a question for ju-
dicial inquiry. But the constitutionality of the statute,
cannot, it appears to me, be doubted.

The second objection is not true in point of fact.
The first act on the subject was passed in the year
1797; and by several other subsequent statutes, the
powers of the commissioners were, from time to time,
revived and continued, until *January*, 1805. By the
statute of 1797, the commissioners were directed to
cause their awards to be entered in a book or books, to
be provided by them for that purpose; and that, when
they had executed the trusts committed to them, they
should deposit such book or books, in the office of the
clerk of the county of *Onondaga*, there to remain as *re-
cords* of their proceedings. The book produced was matter
of record, and had been deposited, either a short time
before or after the powers of the commissioners expired.
The precise time is not stated. The directions of the
statute were, therefore, in this respect, strictly pursued.
The testimony offered as an excuse for not entering a
dissent, even admitting it competent, was too loose to
be entitled to much consideration. The inquiries made
by Mr. *Wood* were general, as to a certain description of
lots, and not pointed particularly to the one in question;
besides, all his inquiries were anterior to the date of the
award. The information given to Mr. *Parsons* by the
clerk of the commissioners, might afford some reason to
doubt whether the award was signed at the time it bears
date, but was of itself altogether insufficient to establish
that fact. Had that been the object of the testimony,
and accompanied with other evidence, showing that to
have been the case, the award would have been consi-
dered as taking effect from the time when signed. But
the testimony offered was not sufficient to rebut the *pri-
ma facie* evidence, arising from the date on the face of
the award. No dissent appears ever to have been en-

NEW-YORK,
Nov. 1809.

tered. The award has been a matter of record, since January, 1805, to which recourse might have been had for information. We can see no possible grounds on which the case can be taken out of the positive provisions of the statute, that the award shall be binding and conclusive, unless a dissent is entered within two years after the making thereof.

The motion for a new trial must therefore be denied.

Motion denied.