BARKER, (DOYNE v.) See Case No. 4,055.

BARKER v. HENRY. See Case No. 989.

---

# Case No. 989.

## BARKER v. JACKSON et al.

[1 Paine, 559.] [1]

Circuit Court, D. New York. Oct. Term, 1826.

COURTS—FOLLOWING STATE PRACTICE —CONSTITUTIONAL LAW—STATUTES—RETROSPECTIVE ACT.

1. Where a statute of the state of New York, affecting the title to lands, had been in existence for thirty years. and had been uniformly sanctioned by the decisions of the courts of the state: *Held*, that this court was bound by such decisions, it not being objected to the statute that it was repugnant to the constitution, laws, or treaties of the United States, but only to the constitution of the state.
  [See Ohio Life Ins. & Trust Co. v. Debolt, 16 How. (57 U. S.) 431.]

2. The act of the state of New York of the 24th of March, 1797, entitled "An act to settle disputes concerning the titles to lands in the county of Onondaga," is in effect only a statute of limitations, and a valid and constitutional law.

3. The commissioners appointed under this act were not a court within the meaning of the 41st section of the constitution of the state.

[1] [Reported by Elijah Paine, Jr., Esq.]

They acted in the character of arbitrators, to hear disputes that should be voluntarily submitted to them; and if their award was not specially agreed to by the parties, it had no binding effect upon the right. It was not necessary, therefore, that they should proceed according to the course of the common law or by jury trial.

4. This act is a law of the land within the meaning of the 13th article of the constitution, although it does not extend over the whole state, but is confined to lands in the county of Onondaga.

5. Being a statute of limitations only, it relates to the remedy and not the obligation of contracts, and therefore is not within the 10th section of the 1st article of the constitution of the United States.
  [See Samples v. Bank, Case No. 12,278; Johnson v. Bond, Id. 7,374; Bacon v. Howard, 20 How. (61 U. S.) 22; Sturges v. Crowninshield, 4 Wheat. (17 U. S.) 206.]

6. Not being retrospective, nor taking away any existing rights, it is no sufficient objection that it does in some measure affect such rights. It affects them by hastening a party in the assertion of them. Most statutes of limitation are subject to the same objection.

Error to the district court of the northern district of New York.

At law. This was an action of ejectment brought [by Henry and others against Joseph Barker] to recover the possession of a part of lot number twelve, in the township of Hector. The premises were originally granted by the state as military bounty lands. At the trial in the court below, the jury found a special verdict, containing the following facts: On the 8th of July, 1790, a patent of said lot was granted by the state to John Folliard. a soldier, who conveyed the same to Abraham Nelson, a native of Ireland, who came to the United States in 1778, and resided here until 1798, when he died. The lessors of the plaintiff were his heirs; but they remained British subjects, having never been in this country. On the 12th day of April, 1800. the commissioners. appointed under the act of the state of New-York, entitled "An act to settle disputes concerning the titles to land in the county of Onondaga," passed March 24th, 1797, (1 Rev. Laws, 213,) made the following award: "Having heard the proofs and allegations, and having examined the titles of such of the parties interested in lot number twelve, in the township of Hector, in the county of Cayuga, as have appeared and exhibited claims to the said lot; and having also inspected the records and files remaining in the office of the clerk of the county aforesaid relative thereto, and due deliberation being thereon had, we, the commissioners appointed by and in pursuance of the act entitled 'An act to settle disputes concerning the titles of lands in the county of Onondaga,' do, in pursuance of the authority given us in and by said act, award and determine, that Benjamin Willard is entitled to and stands seised in his demesne, of an absolute estate of inheritance in and to one undivided moiety of said lot; and that Daniel Wells, James Wells, William Wells,

and Israel Wells, children of Israel Wells, deceased, are entitled to and stand seised in their demesne, as of an absolute estate of inheritance in and to the other moiety of said lot, subject to the reservations, provisions, and conditions contained in the original grant." Which award was duly entered in a book provided for that purpose, and filed in the clerk's office, agreeably to the provisions of the third section of said act, and to which award no dissent has been entered. The lessors of the plaintiff did not appear personally before the commissioners at the time of making the award, nor did any one appear on their behalf, although duly cited, according to the provisions of the 6th section of said act, by a publication in the newspapers. The defendant was in possession of the premises in question, under a title regularly deduced from the title obtained under the award of the commissioners. The verdict also found the said law of 1797, and the 41st article of the constitution of the state of New-York, adopted in 1777, and the 2d and 5th articles of the bill of rights of that year. The court below decided, that the said law and the acts of the commissioners under it were unconstitutional and void, and gave judgment for the plaintiff.

A. Van Vechten and A. Gibbs for the defendants, contended: That the act appointing the commissioners is unconstitutional, and that all the proceedings under it are null and void.

1. That the act being retrospective in its operation, stands opposed to that part of the constitution of the United States which prohibits individual states from making any law impairing the obligation of contracts.

2. That the act is in contravention of the 13th article of the constitution of New-York, as it deprives the lessors of their freehold without the judgment of their peers, and without being called upon to answer by due course of law.

3. That the act is repugnant to the 41st article of the constitution of New-York, and also is prohibited by the 7th article of the constitution of the United States, as it institutes a new court, whose proceedings are not in accordance with the course of the common law, and inasmuch as it abolishes the trial by jury.

S. M. Hopkins and J. King for the plaintiff, insisted: That the act in question, so far as it regards the present action, is an act of limitation merely; that it only affects the remedy of the lessors of the plaintiff, without necessarily involving the question as to the validity of the award of the commissioners.

[Judgment of the district court reversed, and judgment for defendant ordered.]

THOMPSON, Circuit Justice. This case comes up on a writ of error to the district court for the northern district of this state. The judgment of the court below was given upon a special verdict found by a jury. By which finding and the judgment of the court thereupon, as appearing in the record, the only question presented to this court is, whether the act of the legislature of the state of New-York, entitled "An act to settle disputes concerning the titles to lands in the county of Onondaga," passed 24th March, 1797, (1 Rev. Laws, 213,) and the acts and doings of the commissioners under that law are void, as being repugnant to the constitution of the state of New-York, or of the United States. This act and the proceedings of the commissioners were adjudged by the court below to be unconstitutional and void. If this judgment is to be upheld and sanctioned, and the titles in that part of the state usually called the "Military Tract," again thrown open to litigation, it ought to be called for by the most cogent and unyielding considerations. This act has been in force for nearly thirty years, and the value of the lands settled and held under its provisions is almost incalculable. It is not undeserving of consideration, that this act, before it could become a law, must have received the approbation of the council of revision, composed of the governor, the chancellor, and judges of the supreme court of the state, whose peculiar duty it was to examine and guard against any infringement of the constitution. And what is of still more importance is, that whenever the validity of this law has been in any manner called in question, it has uniformly received the sanction of the courts of justice in this state; and indeed such has been the universal understanding in favour of its validity, that the opposite opinion has not been deemed worthy of an argument. The only case in which the point was directly made, was that of Jackson v. Griswold, 5 Johns. 139, decided in the year 1808. And this case was submitted without argument, and the point passed over by the court as not susceptible of a doubt.

But if the question was doubtful, and even if the weight of argument was against the validity of the law, after the lapse of thirty years, and the uniform sanction of the courts of the state, this court would feel itself bound by the construction of the state courts. This law, in its operation and application to the rights of parties, has never been considered by the state tribunals as any thing more than a statute of limitations; and such decisions upon a local law which forms a rule of property, have always been held by the courts of the United States in the highest respect, and in fact have been considered as having a decisive and controlling influence. This rule is very broadly laid down by the supreme court in the case of Elmendorf v. Taylor, 10 Wheat. [23 U. S.] 159, where it is said, "This court has uniformly professed its disposition in cases depending on the

laws of a particular state, to adopt the construction which the courts of the state have given to those laws. This course is founded on the principle supposed to be universally recognized, that the judicial department of every government where such department exists, is the appropriate organ for construing the legislative acts of that government. Thus no court in the universe which professed to be governed by principle, would, we presume, undertake to say that the courts of Great Britain or of France, or of any other nation, had misunderstood their own statutes, and therefore erect itself into a tribunal to correct such misunderstanding. We receive the construction given by the nation as the true sense of the law, and feel ourselves no more at liberty to depart from that construction than to depart from the words of the statute. On this principle, the construction given by this court to the constitution and laws of the United States is received by all as the true construction; and on the same principle, the construction given by the courts of the several states to the legislative acts of those states, is received as true, unless they come in conflict with the constitution, laws or treaties of the United States." It is not here said in terms, that the courts of the United States will follow the construction given by the state courts to their statutes, when the objection grows out of a supposed conflict between the law and the constitution of the state, but the principle embraces such a case, and all the reasoning from it necessarily leads to the same result. As, therefore, the settled construction given to this law by the state courts is, that it is merely a statute of limitations, and in no manner repugnant to the constitution, I might dispense with any further examination of the question, so far as the state constitution may be involved; and indeed, if it is only a statute of limitations, the constitution of the United States can have no bearing upon the question. A due respect, however, for the opinion of the judge who has pronounced this law unconstitutional and void, may make it proper that I should give to the question some further consideration.

The principal ground of objection to this law, arises out of the 41st article of the constitution of New-York, by which it is declared, "that trial by jury, in all cases in which it has heretofore been used in the colony of New-York, shall be established and remain inviolate for ever. And further, that the legislature of this state shall at no time hereafter, institute any new court or courts, but such as shall proceed according to the course of the common law." The first inquiry that seems naturally to arise is, whether the board of commissioners appointed and organized under this act, was a court within the sense and meaning of the article in the constitution above referred to. If it was, it is very certain that their proceedings were not according to the course of the common law, and its institution was in violation of the constitution; if it was not a court, the constitution has no bearing upon it. It is very evident that the legislature did not consider it a court, nor that the commissioners were in any sense to be considered officers, any more than arbitrators or referees would be so considered; for they were named and appointed in the act; whereas if they were officers, they must have been appointed by the council of appointment, according to the provisions of the 23d article of the constitution; and to consider this board a court and its members not officers, would be contrary to all legal understanding of the character of the members of a court. Nor does the act in any part of it give to this board the title, or denomination of a court; or vest in the commissioners, the usual and ordinary powers of a judicial tribunal. They had no authority to compel parties to appear before them, nor are they required to give them personal notice; all appearances were voluntary, and optional in the parties interested in the land. The decision of the commissioners is called an award, or determination; and not a judgment or decree. No power is given to the commissioners to enforce their award or determination, by execution or otherwise. They were to cause their award to be entered in a book for that purpose to be provided; and with this ended their functions. And the act declares, that such award or determination shall, after the expiration of two years after the making thereof, become binding and conclusive to all persons, except such as, conceiving themselves aggrieved, shall within the two years dissent from the same, and give notice thereof to the commissioners, or file the same in the office of the clerk of the county of Onondaga; and shall also, if not in the actual possession of the land, within three years after such award, commence a suit either at law or in equity, to recover the land, or to establish his or her right to the same, and prosecute the same to effect; in which case the award shall not operate as a bar to the suit. The suit required to be commenced within the three years, was to establish the right. This of course could not have been settled by the award; nor can this suit so required to be commenced, with any propriety be considered an appeal from the determination of the commissioners. It is not so called in the act; nor is any mode prescribed for the appeal, or any tribunal designated to which it should be made. But an original suit is required to be brought; and if this is done, and the dissent entered within the time limited by the act, the award has no effect upon the rights of the parties.

That these commissioners were acting in the character of arbitrators, to hear and examine disputes and controversies respecting the titles to these military lands, that should

be voluntarily submitted to them, and without any binding effect upon the right, unless specially agreed to by the contending parties, is very evident from the proviso to the 3d section of the act; "That if the parties in any case will enter into an agreement before the commissioners, to abide by their determination, then, and in every such case, the award and determination of the commissioners shall be final and conclusive, as to such parties, and their heirs for ever." Such an agreement entered into before a court, in the exercise of judicial inquiry into the rights of parties, would certainly be an anomaly in the administration of justice. That the award per se has no binding effect on the rights of parties, is further illustrated by the provisions of the 7th section, which declares that, "if the party dissenting shall be in the actual possession of the premises, then the award so dissented from shall, as to the party dissenting, be considered of no effect. And unless the party in whose favour such award shall be made, shall within three years commence a suit either at law or in equity, to recover the land, or to establish his right to the same, and shall prosecute such suit with effect; then such person in whose favour such award is made, and his heirs, shall be for ever barred of all right, title, or claim, to the land so awarded." Here, again, even the party having the award, is required to bring a suit to establish his right, and if he neglects so to do for three years, he is barred of all right. The range of examination which the commissioners were to make, shows they were not acting as a court, and judging upon the rights of parties litigating before them; for where no adverse claim appeared, they were required to make an entry to that effect in their books. They could not be considered as arbitrators, except in the cases coming under the proviso to the 3d section of the act; and are therefore denominated commissioners, to hear, examine, award, and determine, disputes and controversies respecting the titles to these lands. The powers here given are adapted to the various objects of inquiry committed to the commissioners. The peculiar state and condition of the titles to these military lands, rendered some special legislation on the subject indispensable. The evils existing, appear from the recitals in one of the laws in relation to these lands, which required all deeds which had been given for the same, to be deposited in a public office, (Act Jan. 8, 1794:) "Whereas it is represented to the legislature, that many frauds have been committed respecting the titles to the lands granted by this state as bounty lands to the officers and troops, &c. by forging and antedating conveyances, and by conveying the said lands to different persons, and by various other contrivances, so that it has become very difficult to discover in whom the legal title to some of the said lands is

now vested," &c. To meet these evils as far as was practicable, the law now in question, among others, was passed; not instituting a court for this special purpose;—the existing courts of justice in the state were amply sufficient, so far as mere judicial proceedings were necessary;—but commissioners were appointed to hear, and examine into, the disputes and controversies respecting these lands; as a kind of preliminary step to the commencement of a suit to try the right. Their award or determination, however, had no influence upon the right, unless the parties entered into an agreement before them, that it should have a binding effect. A dissent suspended the award, and it became operative only in case of neglect to bring a suit within the time limited; and of course, the act is nothing more in its application to these lands than a statute of limitations. If these commissioners did not form a court within the constitutional, and common law sense of such a tribunal, it was clearly no violation of the constitution, that a jury was not called in to pass upon the matters of fact submitted to the commissioners. The constitution secures the trial by jury in such cases only, where it had been used in the colony of New-York. So far as these commissioners may be considered arbitrators, a jury would not be required; no such usage was ever heard of under the colonial government, and so far as respects their powers other than those of arbitrators, the commissioners formed a new tribunal, unknown to the colonial government; and no trial by jury could of course ever have been used in such case under that government.

A still more untenable objection against this law has been taken, as being in violation of the 13th article of the constitution; which declares, that "no member of this state shall be disfranchised, or deprived of any of the rights and privileges secured to the subjects of this state by this constitution, unless by the law of the land, or the judgment of his peers." The objection is, that the law in question is not a law of the land, because it is not general and extending over the whole state; but is confined to lands in the county of Onondaga. There is certainly no colour for this objection requiring any serious consideration. If well founded, it would strike at a great portion of the statutes of the state; and if this is only a statute of limitations, no one is deprived by the award, or has his freehold taken away without the judgment of his peers. All these rights remain untouched, if the suit be brought within the time limited by the act. And this is an answer to the objection, that the right of trial by jury as secured by the constitution of the United States, is taken away. The proceedings of the commissioners are not a trial within the meaning of the constitution. The act expressly requires a suit to be brought to establish the right: and where it

is a suit at law, the right of a trial by jury remains unimpaired by this law.

Nor does this act violate that provision in the constitution of the United States, (article 1, § 10,) which prohibits the states from passing any law impairing the obligations of contracts. Statutes of limitation relate to the remedy, and not to the obligation of a contract. This distinction is well settled by the decision of the supreme court of the United States; and that the state legislature may pass such laws, under such modification as their wisdom should direct,—[Sturges v. Crowninshield,] 4 Wheat. [17° U. S.] 206,—without infringing the constitution of the United States.

No objection can be made to this law, because it does in some measure affect existing rights: It is not retrospective, and does not take away from a party any existing right: It only hastens him in the assertion of such right. But if he brings his suit within the time limited, his title is tried in the same manner as if this law had never been passed. This may be thought to be a rigorous statute of limitations, but that was a matter resting in the sound discretion of the legislature; and with which the courts of justice have no concern. The condition of the titles to the land in the military tract, called for some strong legislative measures. Most statutes of limitation do in some measure affect existing rights. Among others, the law of this state limiting the period for bringing claims and prosecutions against forfeited estates, (Act March 28, 1797, 1 Rev. Laws, 128,) is made in terms to apply to existing rights. It declares, that no persons who now have any estate, right, or title, to land supposed to have been forfeited, &c., shall, after the expiration of five years from the passing of the act, sue, or maintain any action for the recovery of the same. So the act requiring all deeds for military bounty lands to be deposited in the clerk's office, though not a statute of limitation, yet applies to existing deeds. It declares, that all deeds heretofore made for such lands, shall within a limited time be so deposited; and that all deeds not deposited, shall be adjudged fraudulent and void: And many other statutes of a like character might be referred to. Yet the validity of these laws has not been questioned because they affect existing rights: They are all prospective in their application to such rights, and the effect upon them grows out of a neglect to comply with some new duty, required thereafter to be performed.

I am accordingly of opinion, that the judgment of the district court be reversed, and judgment entered for the defendant in the court below.